**LeRoy H. ELLIS**

v.

**The UNITED STATES.**

No. 261–78.

United States Court of Claims.

Aug. 19, 1981.

Paul F. Stack, Chicago, Ill., attorney of record, for plaintiff. Robert A. Filpi and Stack & Filpi, Chicago, Ill., of counsel.

Velta A. Melnbrencis, Washington, D.C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, for defendant. Earl Allen Sanders, Washington, D.C., Office of Personnel Management, of counsel.

Before NICHOLS, KUNZIG and SMITH, Judges.

## OPINION

NICHOLS, Judge:

Plaintiff was a government-employed firefighter. On October 25, 1975, he was over 50 years of age and had served over 20 years, thereby meeting the two preconditions of 5 U.S.C. § 8336(c) for retirement with full annuity. He did in fact retire and accepted employment in Alaska with Artic Constructors, Inc. at $1,485 per week. However, he returned to his old job in March 1976 because of an erroneous Civil Service Commission ruling that denied him his annuity on the asserted ground that he was not a firefighter and therefore not entitled to annuity under the special provisions of § 8336(c). He challenged this ruling by suit in this court and apparently won

by our decision, 222 Ct.Cl. ——, 610 F.2d 760 (1979). We held he was indeed a firefighter. The case returned to the trial division under Rule 131(c) for determination of quantum. A recommended decision by Trial Judge Willi would establish, if correct, that Ellis won the battle but lost the war. It awards him the withheld annuity only from October 25, 1975, to April 5, 1976, which would result in a judgment of $3,856.06 after credit for a partial payment of $1,677. As it also denies him counsel fees, it is clear no Clausewitz would assess the campaign as successful to that point. However, it was not yet over. We determine that there is no legal basis for denying Ellis' entitlement to annuity after April 5, 1976, or for offsetting the annuity against his active duty pay. The denial of counsel fees was correct. Our reasons for these conclusions follow.

I

The authority now relied on for denying the annuity, or more strictly, offsetting it against active duty pay, is 5 U.S.C. § 8344 which now reads and did read on pertinent dates, as follows:

§ 8344. Annuities and pay on reemployment

(a) If an annuitant receiving annuity from the Fund, [the Civil Service Retirement and Disability Fund, see 5 U.S.C. § 8331(5)] except—

\* \* \* \* \* \*

[exceptions not applicable]

becomes employed in an appointive or elective position, his service on and after the date he is so employed is covered by this subchapter. Deductions for the Fund may not be withheld from his pay. An amount equal to the annuity allocable to the period of actual employment shall be deducted from his pay, except for lump-sum leave payment purposes under section 5551 of this title. The amounts so deducted shall be deposited in the Treasury of the United States to the credit of the Fund. \* \* \* [There follow provisions we can disregard for now, dealing with the accrual of *new* supplemental annuity rights during reemployment.]

■ This defense seems to have sprung like a phoenix from the ashes of defeat. It is obvious that the statute does not cover the case by its literal terms. Plaintiff was not receiving an annuity from the Fund at the time of his reemployment. It had already been denied him, by a decision that was binding upon him unless overturned by a court. He has not received the annuity yet except for the periods not at issue. Defendant did not purport to act under § 8344 and violated it if applicable. It did not deduct the amount of the annuity as the statute required, and on the other hand, defendant *did* withhold for the Fund as the statute said it should not do. The trial judge is clearly wrong in treating the statute as literally applicable.

Yet we must concede that a facially respectable argument for the trial judge's position can be made. The invalidation of the Civil Service decision, that denied plaintiff his annuity, means that plaintiff's entitlements to pay and annuity must be reconstituted as if the erring decision had never been made. Thus, it is argued, he was a reemployed annuitant, even if both he and the employing agency were ignorant of the fact. As a reemployed annuitant he was liable to have his salary docked to reimburse the Fund, even if the Fund had paid nothing. Q.E.D.

The flaw in the argument is that the Fund has not been depleted. The docking is not required to compensate a depletion that has not occurred. The Fund would indeed be unjustly enriched if it received plaintiff's supposititious annuity by any accounting legerdemain. The Fund will not pay any part of plaintiff's recovery under this court's judgment, however calculated. There is no provision for this in 31 U.S.C. § 724a, *as amended,* the standing appropriation to pay this court's judgments, as there is e. g., for judgments allocable to nonappropriated fund activities. Therefore, there is no need for the Fund to retrieve a depletion that has not occurred and will not, and no need to dock the salary to provide a means of paying the Fund. The declared

object of congressional concern, the thing it moved to prevent in § 8344, is the depletion of the Fund to pay reemployed annuitants. It has set up a scheme that cannot be made to work in the case of a constructive reemployed annuitant not actually in receipt of annuity payments. It may be conceded that plaintiff's claim, if allowed, will deplete the general fund. Whether Congress feels an equal concern for depletion of the general fund of the Treasury for that purpose is anyone's guess. If it does, it has not so stated.

## II

Even were these difficulties deemed too technical to be noticed, we would have very serious doubts about the propriety of making anyone a constructive reemployed annuitant for § 8344 purposes, without either he or his employing agency being aware of it. The law views the § 8344 annuitant with very special disfavor, which argues against enlarging that class by implication or assigning it constructive members. If the retiree wants to continue working, he can be employed by a private company, as plaintiff was for a while, and without challenge enjoy both his annuity and his active duty pay. Retirees paid by funds other than the Fund can be employed in the Civil Service without docking of salary. If the idle life appeals more to him, he can enjoy it with but a small cut in pay, which can be more than offset by choice of a low cost area for a place of residence. As a reemployed annuitant he has the worst of both worlds. He foregoes the easy life and returns to his former slavery. Yet he gets the wages of idleness only, plus what is often but a mere pittance. To earn this, he must live, not where living is cheap, but where the employer's convenience requires his services. No one would willingly be a reemployed annuitant who did not feel an extraordinary love for the former job or an exceptional zeal for public service—qualities more common, to be sure, with our civil servants than it pleases some to admit.

The legislative history throws light on the reasons for the special disfavor toward the reemployed annuitant. It is evident this disfavor worked in tandem with the compulsory retirement at 70 that formerly obtained, to assure frequent vacancies in positions at the top of the Civil Service, and so improved prospects of promotion for the younger staff. Also, the provision of § 8344 in its original 1948 form prevented the annuitant from engineering his own reemployment merely to increase his annuity, as had been possible under the previous system, where the annuity was simply terminated on reemployment and recomputed on re-retirement. Under the new law, no such increase occurred. "It will prevent inequities arising as a result of annuitants being reemployed primarily for the purpose of acquiring new or additional retirement rights." *See* S.Rep.No. 746, 80th Cong., 2d Sess. 2 U.S.Code Cong.Serv. (1948) 1107, 1109. This purpose is not so plainly served at present, since a modified amount of supplemental annuity can accrue during reemployment, but it was more important when the § 8344 scheme was first contrived. Congress obviously visualized the former section chief who could walk into his former offices and get his former colleagues to work out for him anything he wanted, respecting reemployment. The farthest removed from this is the constructive reemployed annuitant who does not even know he is a reemployed annuitant. The legislative history reveals not the slightest evidence of a congressional wish to crack down on him.

We conclude, therefore, that placing a person constructively under § 8344 is a harsh result unintended by Congress where the person never had any reason to suppose he was a reemployed annuitant and the employing agency never said he was, nor did the employment documents so reflect. It is the kind of statutory construction courts avoid even when, unlike here, the literal language would seem to demand it. *E. g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). To put the matter in traditional equity terms, an agency estops itself to say an employee is a reemployed annuitant when it fails to state that position until

long after reemployment, though in full possession of the facts all along. Considering as done what ought to have been done, the CSC ought to have informed plaintiff he was a reemployed annuitant, this of course on the hypothesis the erroneous contrary decision never was. If it had informed plaintiff he was a reemployed annuitant, of course he would have quit at once and returned to his well paying Alaska job. Making him a constructive reemployed annuitant is not a realistic reconstruction of what would have happened if the CSC had done what it ought to have done.

■ Our previous panel considered and rightly rejected a proposal to base plaintiff's damages on the pay he gave up in Alaska. This would be a tort theory of damages not covered in defendant's consent to be sued. It is, however, appropriate to consider the Alaska pay on the issue of detrimental reliance on the CSC decision. But we do not hold it crucial to our holding. Nor do we deem it relevant whether plaintiff was in any way coerced to abandon his Alaska job. We assume he was not. The conclusion is that in plaintiff's suit to recover his annuity, defendant is not entitled to an offset for the sum the Navy was supposititiously but not *really* required to pay the Fund, to make whole the Fund for the amount supposititiously but not *really* spent by the Fund toward plaintiff's annuity.

### III

■ In addition to the amount the trial judge awarded, plaintiff is therefore entitled to a further sum of $66,254 which represents the total annuities from his reemployment by the Navy, April 5, 1976, to his re-retirement, August 31, 1980. He also claims $8,532.23 representing withholding from his pay during his reemployment, for his further contribution to the Fund. Section 8344 would have exempted him from this, but his litigation position here, which we sustain, is that § 8344 is not applicable to his reemployment period. We think in these circumstances he has not established his right to recover this sum, but it should be taken into account if at all,

only as establishing a new basis for an addition to the annuity, to run from re-retirement on. By a parity of reasoning, he is not entitled to the supplement to his annuity rights provided by a portion of § 8344 not quoted above. Plaintiff also claims refund of deductions from his salary for life insurance, but this claim is without merit and is denied. Plaintiff's claim for attorney's fees is also denied. *Nibali v. United States*, 225 Ct.Cl. ——, 634 F.2d 494 (1980).

### CONCLUSION OF LAW

Plaintiff is entitled to recover judgment to the extent indicated in this opinion, *i. e.*, any and all unpaid annuity from his first retirement to the date of judgment. We do not enter judgment as we are not certain whether annuity payment was resumed following the re-retirement on August 31, 1980, and if it was, whether in the right amount. This would seem an appropriate subject for a negotiated settlement, but if necessary, the trial division will determine this in further proceedings under Rule 131(c) and will recommend the amount of judgment to be entered in view of this opinion.

EDWARD S. SMITH, Judge, concurring in part and dissenting in part:

In general I agree with Judge Nichols' conclusions in Parts I and II of his opinion.

On the assumption that the Fund will not pay any part of plaintiff's recovery and thereby be depleted to compensate a "reemployed annuitant," a literal reading of section 8344(a) arouses no compelling argument to deny plaintiff recovery of "[a]n amount equal to the annuity allocable to the period of actual employment." Certainly, this amount need not, on that basis, be denied plaintiff *for the purpose of compensating the Fund*. My brethren of the majority feel that 31 U.S.C. § 724a protects the Fund from "this court's judgment, however calculated." I am not as positive, as they seem to be, that the law is all that certain

on this point.[1] Neither party has raised the point, or briefed it, or even cited section 724a. Such guidance as we can find from precedence derives primarily from practice, which does support the majority's view.

Part II of the majority opinion appears to apply the rule of least objectionable ignorance. I do not say that critically, as that rule does produce the most equitable result in these facts and in the absence of a clear statutory provision. Plaintiff and his employer, the Navy, concluded that he was a "firefighter" and entitled as such to the appropriate retirement. Less than 5 months after his "retirement," the Civil Service Commission (CSC) completed its review of plaintiff's application and, in effect, held that plaintiff and the Navy acted in ignorance of the law and that he was not a "firefighter." Plaintiff returned to reinstatement at his place of employment at the Great Lakes Naval Training Center and brought suit in this court to overturn the determination of the CSC. In effect, our earlier opinion[2] held that it was the CSC that acted in ignorance of the law; that plaintiff *had* been a "firefighter" and *had* been entitled to retire on October 25, 1975. In effect, we reinstated plaintiff's progression from active to retired status. In doing so we converted him from a status of "uninterrupted active employment" to a status of reemployed "retiree." This brought us to the critical inquiry whether plaintiff also became a reemployed "annuitant."

In effect the result reached in Part II is based on the impropriety of making plaintiff a *constructive* reemployed annuitant for section 8344 purposes in view of his ignorance, shared by his agency, of the fact that he occupied that status, and especially in light of the literal reference in section 8344 to "an annuitant *receiving annuity from the Fund.*" (Emphasis supplied.) Section 8344 neither clearly covers nor clearly fails to cover this particular plaintiff. Whether the same unusual combination of facts and ignorances will ever occur again, in circumstances that *would* deplete the Fund and would unnecessarily encourage the reemployment of annuitants, is highly doubtful. There are flaws in this record which discourage me from an attempt to resolve all ignorance as to what is the full intention of section 8344. One additional item of ignorance—that of plaintiff in concluding that he could not have remained at his good job in Alaska while he attacked the CSC determination—naturally generates a lot of sympathy for this particular plaintiff. He was a good sailor because he was "a good soldier" in that he agreed with his employer to return to Great Lakes. This is the focal point of his unfortunate predicament. In these unique facts and under these imprecise provisions, should this plaintiff suffer when no damage is done to the comprehensive statutes that protect the Fund? I think not, and therefore concur in the result of the majority's holdings in Parts I and II.

As to Part III, I concur with the holding that plaintiff is not entitled to recover the deductions from his salary for life insurance, or to recover attorneys' fees. As to the remainder of Part III, I respectfully dissent.

I find confusing the statement of the majority that plaintiff is not entitled to a supplemental annuity under section 8344(a) and yet might be entitled to an increment in his original annuity based on the retirement deductions withheld from his salary during the reemployment period. I view plaintiff's litigation position in this respect as the equivalent of any regular employee's right to claim refund of such deductions actually withheld. Refund in such instances eliminates the resulting annuity, or, in this case, supplemental annuity. The majority has held that section 8344(a) does not apply to plaintiff as a reemployed "annuitant receiving annuity from the Fund"; but, even if plaintiff *were* a "reemployed annuitant," section 8344(a) deals only with an unequivocal right not to have deductions for the Fund *withheld* from plaintiff's pay.

1. See 5 U.S.C. §§ 8348(a)(1)(A) and (2) (1976).

2. *Ellis v. United States*, 222 Ct.Cl. ——, 610 F.2d 760 (1979).

That is a different right from the right to *recover* deductions that are in fact withheld. Since these deductions were in fact actually withheld, and since plaintiff's litigation position claims their refund, and since any civil service employee has a right (irrespective of the prohibition against withholding in section 8344(a)) to recover his withheld deductions for payments into the Fund, I would grant his claim for those withheld amounts and presently recognize his resultant voluntary waiver of any supplemental or incremental annuity based on such deducted amounts.