LeRoy H. ELLIS

v.

**The UNITED STATES.**

No. 261–78.

United States Claims Court.

Nov. 2, 1982.

---

See also, Ct.Cl. 657 F.2d 1178, 610 F.2d 760.

Paul F. Stack, Chicago, Ill., for plaintiff.

Velta A. Melnbrencis, New York City, with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

WILLI, Judge:

After the United States Court of Claims, by separate opinions, decided both the issues of liability[1] and damages[2] in plaintiff's favor in this action he petitioned for allowance of attorney's fees of $21,986.25 and costs of $565.63 pursuant to § 204(a) of the Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2327, 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980). Defendant has opposed and this opinion is to resolve the resulting dispute.

Under the Act, *supra*, a "prevailing party other than the United States * * *" shall be awarded (28 U.S.C. § 2412(d)(1)(A) (Cum.Supp.1982)):

> [F]ees and other expenses * * * incurred by that party in any civil action * * * brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

An award of "fees and other expenses" may include "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).

The Act addressed a longstanding congressional concern that private individuals and small businesses were being "deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil ac-

---

1. *Ellis v. United States*, 222 Ct.Cl. 65, 610 F.2d 760 (1979).

2. *Ellis v. United States*, 228 Ct.Cl. ——, 657 F.2d 1178 (1981).

tions and administrative proceedings." Act § 202(a), Pub.L. No. 96–481, 94 Stat. 2325 (1980). *See Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 16 (1980) (statement of Senator Domenici).[3]

■ The primary purpose of the Act is to reduce the economic deterrents to contesting unreasonable governmental actions. Act § 202(c)(1), Pub.L. No. 96–481, 94 Stat. 2325 (1980); H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 6, *reprinted in* [1980] U.S. Code Cong. & Ad.News 4953, 4984. Additionally, the Act is intended to make whole those small businesses and individuals who have been the victims of unreasonable governmental actions. *See* 1980 *Attorneys' Fees Hearings, supra,* at 18 (statement of Senator Domenici) and at 24 (statement of Senator DeConcini). *See also* 125 Cong.Rec. S10, 914 (daily ed. July 31, 1979) (remarks of Senator DeConcini); *Awarding of Attorneys' Fees: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary,* 94th Cong., 1st Sess. 59 (1975) (statement of Mr. Wiggins).

Defendant opposes the award sought by plaintiff on three grounds viz (1) that the Act does not authorize recovery because substantially all of plaintiff's legal fees and related costs were incurred before the legislation's effective date, October 1, 1981;[4] (2) that the Government's position in the case was substantially justified; and (3) that special circumstances are present here that make an award of attorney's fees and costs unjust.

Because it is concluded, for reasons that follow, that the Government's position on both the liability and damage aspects of this case was substantially justified only that defensive contention will be discussed.

Congress characterized the "substantially justified" standard as one of reasonableness to be determined according to stated criteria to be applied with the burden of proof on the Government: [5]

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a *reasonable basis both in law and fact, no award will be made.* In this regard, *the strong deterrents to contesting Government action require that the burden of proof rest with the Government.* This allocation of the burden, in fact, reflects a general tendency to place the burden of proof on the party who has readier access to and knowledge of the facts in question. The committee believes that it is far easier for the Government, which has control of the evidence, to prove the reasonableness of its action than it is for a private party to marshal the facts to prove that the Government was unreasonable.

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

*The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard*

**3.** Senators Domenici, DeConcini, and Nelson were sponsors of S. 265, the Senate's version of the Act.

**4.** Prevailing precedent is to the contrary. *United States for Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348 (D.D.C.1982); *Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982); *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982); *Watch v. Harris,* 535 F.Supp. 9 (D.Conn.1981); and *Matthews v. United States,* 526 F.Supp. 993 (M.D.Ga.1981).

**5.** *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission,* 672 F.2d 426, 429–30 (5th Cir.1982).

*require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.* (Emphasis added.)

H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 10–11, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4953, 4989–90; S.Rep. No. 96–253, 96th Cong., 1st Sess. 6 (1980).

In *Papson v. United States,* Ct.Cl. No. 602–80T, Order of June 18, 1982, the United States Court of Claims equated governmental conduct that was not substantially justified with reprehensibility.[6]

The liability issue in this case, presented to the court on the parties' cross-motions for summary judgment, concerned the question of whether plaintiff, over 50 and having served as Chief[7] of the Navy's Great Lakes Fire Department for 22 years, was, contrary to the prior determination of the Civil Service Commission (the Commission), entitled to the early retirement privileges accorded a "firefighter" as that term is defined by 5 U.S.C. § 8331(21).[8]

The Commission denied plaintiff eligibility as a "firefighter" because the evidentiary record before it[9] which included all of his personal records, showed that his entire service at Great Lakes was as head of the Base's Fire Department. Given that responsibility, the Commission reasoned, his primary duties were necessarily supervisory and administrative. Plaintiff's stance before the Commission was not inconsistent with that conclusion. The essence of his position there is well-expressed in two sentences from his letter of August 25, 1976 to the Commission, as follows:

Any Fire Chief worthy of his position must be not only a firefighter but a supervisor and leader, he must be in the fires with his men.

\* \* \* \* \* \*

A Fire Chief regardless of title is a firefighter.

By an array of affidavits, including his own, appended to his summary judgment motion[10] plaintiff substantially expanded on the references in the administrative record to his personal participation in the extinguishment of fires. Finding that material persuasive,[11] the court reversed the Commission, summarizing its conclusion as follows (222 Ct.Cl. 75, 610 F.2d at 765):

In short, we hold that Ellis is a "firefighter" within the definition contained in the first half of 5 U.S.C. § 8331(21), given the facts of this case depicting extensive firefighting activity on his part.

\* \* \* \* \* \*

In upholding the Commission's position the defendant was entitled to assume that the court would evaluate that position on the basis of the factual record that was before the Commission; not on one augmented by additional facts proffered in summary judgment affidavits that the Commission never saw. *Bayly v. United States,* 99 Ct.Cl. 598, 605–06 (1943). Cf. *Brown v. United States,* 184 Ct.Cl. 501, 396 F.2d 989 (1968), where the court, after painstaking analysis, justified taking cognizance of fresh evidence in passing on the validity of a Correction Board decision in the military disability-retirement area. The justification was rested squarely on the

---

**6.** This court has formally adopted all orders of the United States Court of Claims, U.S.C.C., General Order No. 1, October 7, 1982.

**7.** While plaintiff's position did not at all times carry the title of Chief, it is undisputed that throughout his service at the Great Lakes Base he functioned as the supervisory and administrative head of all firefighting operations there.

**8.** 5 U.S.C. § 8331(21) provides:
"Firefighter" means an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance

and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

**9.** A certified copy of the administrative record was filed with the United States Court of Claims on November 6, 1978.

**10.** Plaintiff's Motion for Summary Judgment, filed January 17, 1979, Exs. A through H.

**11.** *See* 610 F.2d at 764, n. 7.

inadequacy of the administrative procedures indigenous to that type of determination—procedures that typically resulted in no hearing at all and in an administrative record that normally consisted only of "a miscellaneous collection of materials presented by the claimant and, to a much less extent, by the service." 184 Ct.Cl. at 512, 396 F.2d at 996.

Any vitality perceived in *Schlegel v. United States,* 189 Ct.Cl. 30, 36, 416 F.2d 1372, 1375 (1969), extending, without explanation, the *Brown* standard of review to the far more regularized determinations of the Civil Service Commission must be viewed as transitory at best, given the Supreme Court's subsequent pronouncement in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

■ The sound logic of determining the arbitrariness or capriciousness of a challenged agency action solely by reference to the facts that were before the agency when it acted is indisputable. To permit, for purposes of court review, enlargement of the factual frame of reference fashioned at the administrative level in the context of adequate fact-gathering procedures is to require not only prudence but clairvoyance of the administrator.

In deciding the legal aspect of plaintiff's eligibility as a "firefighter" as it did, the Commission was faithful to both the letter and spirit, as revealed by the legislative history, of the statutory language as well as the implementing regulations.

Until 1972 early retirement, *i.e.,* at age 50 with 20 years of service, was restricted to law enforcement officers. In that year, following a Presidential veto of similar legislation passed by the preceding Congress, the privilege was extended to firefighters who "are primarily to perform work directly connected with the control" and extinguishment of fires * * * " by enactment of

Pub.L. No. 92–382, 86 Stat. 539. The legislation originated as H.R. 7060, 92d Cong., 2d Sess.

Mindful of the rejection of the previous legislative effort, Congress emphasized the safeguards against abuse of the preferential privilege. In favorably reporting the measure the Post Office and Civil Service Committee summarized those protections as follows (H.Rep. No. 92–840, 1972 U.S.Code Cong. & Ad.News 2941, 2944):

> The same safeguards applicable to law enforcement personnel will apply to firemen, since an individual determination of early retirement eligibility will be made by responsible officials who have access to duty and *personal records.* (Emphasis added.)

On November 22, 1972,[12] in discharge of its rule-making obligations,[13] the Commission issued the following interpretive regulation (5 C.F.R. §§ 831, 904):

> *Firefighter.*
>
> (a) "Firefighter" includes an employee whose primary duties, *as set forth in the official position description,* require the performance of work directly connected with the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment.
>
> (b) "Firefighter" *also includes an employee who is transferred* to a position the primary duties of which are not the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, or from such a position to another such position, *if—*
>
> (1) *Service in the position transferred to follows service in a firefighter position* without—
>
> (i) A break in service of more than three days; or
>
> (ii) Intervening employment that was not as a firefighter;
>
> (2) The duties of the position transferred to are in the firefighting line of work

---

**12.** 39 Fed.Reg. 40935–36.

**13.** 5 U.S.C. § 8347(a).

in an organization with firefighting responsibilities; and

(3) *The position transferred to is—*

(i) *Supervisory*—one which requires a duty of supervising subordinate employees who are directly engaged in firefighting and/or in the maintenance and use of firefighting apparatus and equipment; or

(ii) *Administrative*—one which includes an executive or managerial position and may include a clerical, technical, semiprofessional, or professional position of a type also found in organizations with no firefighting responsibilities; Provided, That experience as a firefighter is a basic qualification for the administrative qualification for the administrative position. (Emphasis added.)

Plaintiff's personnel records, all of which were brought before the Commission, reflect the undisputed reality that throughout his service at Great Lakes he was the supervisory and administrative head of all firefighting forces there. The fact that he frequently displayed great courage in directing his forces at the scene of fires served to reinforce rather than displace his primary role of leadership. It cannot, therefore, be said that in denying that plaintiff was a "firefighter" within the meaning of the statute and regulations defendant's position was unreasonable, particularly so given the absence of a single judicial precedent to the contrary.

When the court reversed the Commission's determination as to plaintiff's eligibility status it remanded the cause for assessment of damages.

The relevant facts are that, with the Navy's approval, plaintiff first retired on October 25, 1975. After the Commission determined that he was ineligible for early retirement as a firefighter he returned to his former position as Fire Chief at Great Lakes on April 5, 1976. He remained on the rolls there until he again retired, this

14. Pursuant to that holding a judgment of $72,-357.06 was entered for plaintiff on November 6,

time without complication, on August 31, 1980.

In an opinion of June 9, 1980, the trial judge held that plaintiff was entitled to recover $3,856.06 representing $5,533.06, the retirement monies due him for the period October 25, 1975 (the date on which the court had held that he lawfully retired) through April 4, 1976 (the day before he resumed his former position) less $1,677, the amount of such retirement monies that he had already received. The opinion further held that by virtue of 5 U.S.C. § 8344(a) plaintiff was not entitled to receive retirement payments after April 4, 1976 for so long as he remained actively employed because his pay for such service had not been reduced to take account of retirement benefits, as the referenced provision directs in the case of reemployed annuitants.

On appeal the court reversed the trial judge, holding that for the period April 5, 1976 through August 31, 1980, plaintiff was entitled to *both* his retirement annuity in full and the regular pay of his position without diminution on account of the concurrent annuity. *Ellis v. United States,* 228 Ct.Cl. ——, 657 F.2d 1178 (1981).[14]

In reaching its conclusion the court characterized the position below, and that urged before it by defendant, as follows (657 F.2d at 1180):

Yet we must concede that a facially respectable argument for the trial judge's position can be made. The invalidation of the Civil Service decision, that denied plaintiff his annuity, means that plaintiff's entitlements to pay and annuity must be reconstituted as if the erring decision had never been made. Thus, it is argued, he was a reemployed annuitant, even if both he and the employing agency were ignorant of the fact. As a reemployed annuitant he was liable to have his salary docked to reimburse the Fund, even if the Fund had paid nothing. Q.E.D.

1981.

While the court had little difficulty in approving an employee-annuitant's receipt of full pay for his job plus the full annuity that he would receive if he were at the same time retired, its acknowledgement that the *contra* view had at least "facial" respectability places defendant's advocacy of that view well within the zone of reasonableness for which the Equal Access to Justice Act denies the prevailing party attorney's fees. Certainly, such advocacy can by no stretch be deemed reprehensible. *See Papson v. States, supra.*

## CONCLUSION

 Since defendant's position in this litigation was substantially justified in respect of both the liability and damage issues, plaintiff's application for attorney's fees and costs must be DENIED.