DAVIS, Circuit Judge.
 

 LeRoy H. Ellis appeals from a judgment of the United States Claims Court denying his application for attorney’s fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (Supp. V 1981). That court declined to award attorney’s fees and costs to appellant because, in its view, the government’s litigation position was “substantially justified.” We affirm in part and reverse in part.
 

 I
 

 Appellant’s application for attorney’s fees and costs follows upon his long-pending effort to recover his hazardous duty retirement annuity in the Court of Claims. The
 
 *1573
 
 detailed facts are reported in previous opinions of that court.
 
 Ellis v. United States,
 
 610 F.2d 760 (Ct.Cl.1979)
 
 (Ellis I); Ellis v. United States,
 
 657 F.2d 1178 (Ct.Cl.1981)
 
 (Ellis II).
 
 For our purposes, a brief summary of the litigation will suffice.
 

 For over twenty years, Ellis served as a civilian fire chief at the Great Lakes Naval Training Center in Illinois. In October 1975, he retired and claimed his hazardous duty retirement annuity in accordance with 5 U.S.C. § 8336(c)(1) (Supp. V 1981).
 
 [1]
 
 The Navy accepted his retirement under this “firefighter” statute and Ellis entered the private work-force. However, the then Civil Service Commission later denied (in March 1976) entitlement to that annuity on the grounds that he was not a “firefighter” within the meaning of the statute, but a “supervisor.” Consequently, Ellis returned to duty at Great Lakes in April 1976, and in 1978 filed suit in the Court of Claims to recover the claimed annuity. On cross-motions for summary judgment, the court held that Ellis fit the statutory description of “firefighter” and thus was entitled to hazardous duty annuity payments.
 
 Ellis I, supra,
 
 610 F.2d at 764-65.
 
 [2]
 
 The court then remanded the case to the Trial Division for calculation of the annuity judgment.
 

 On remand, the trial judge recommended that appellant had, constructively, the status of a reemployed annuitant from the time of his return to duty in 1976 to his second retirement in 1980. By 5 U.S.C. § 8344, if he had been an actual reemployed annuitant, an amount equal to his annuity would have been deducted from the active duty salary and returned to the Retirement and Disability Fund so that, in effect, the reemployed annuitant netted only the active duty salary and got no benefit from the annuity. Accordingly, the trial judge allowed nothing for the annuity during that period, ceasing the annuity recovery as of the date of return to duty.
 

 Appellant filed exceptions to this recommended decision. The Court of Claims held that 5 U.S.C. § 8344 was literally inapplicable and should not be applied constructively. It was literally inapplicable because he was not in fact receiving the annuity, the only case § 8344 covered. Therefore, the entire amount of unpaid annuity that accrued while appellant was reemployed was to be added to his recovery without offset for any of his active duty pay.
 
 Ellis II, supra.
 

 Following his successful challenge to the trial judge’s calculation of damages, appellant applied for attorney’s fees and costs under the EAJA on November 18, 1981, seeking these expenses for both the liability and the damages phases of the proceedings. This application, filed while the Court of Claims was still in existence, was transferred by statute on October 1, 1982, to the Claims Court. That court ruled in November 1982 that the government’s position in both phases was substantially justified and accordingly denied the application.
 
 Ellis v. United States,
 
 1 Cl.Ct. 6, 11, 550 F.Supp. 674, 680 (1982).
 

 II
 

 The Equal Access to Justice Act provides, in relevant part, that a prevailing party shall recover fees and other expenses in any civil action against the United States from “any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified. ...” 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981). “Fees and other expenses” include reasonable attorney’s fees.
 
 Id.
 
 § 2412(d)(2)(A). As the Claims Court correctly noted, the EAJA applies to this case, as it was pending in the Court of Claims on
 
 *1574
 
 that statute’s effective date.
 
 See Kay Manufacturing Co. v. United States,
 
 699 F.2d 1376, 1378 (Fed.Cir.1983);
 
 Knights of the Ku Klux Klan v. East Baton Rouge,
 
 679 F.2d 64, 67-68 (5th Cir.1982);
 
 Photo Data, Inc. v. Sawyer,
 
 533 F.Supp. 348, 351 (D.D.C. 1982).
 

 Appellee urges initially that no attorney’s fees can be awarded in this case because the Claims Court, said not to be a “court of the United States,” is without jurisdiction to award fees under the EAJA.
 
 [3]
 
 That argument misses the mark. Properly formulated, the real question here is whether the Claims Court and this court have jurisdiction to determine the propriety of a fee award in a so-called “transition” matter, begun before the Court of Claims, carried over by statute to the Claims Court, and then decided by the latter after October 1, 1982.
 
 See Aleut Tribe v. United States,
 
 702 F.2d 1015, 1018 (Fed.Cir.1983).
 

 Neither party now disputes the fact that the Court of Claims properly assumed jurisdiction of the merits of Ellis’ claim for his hazardous duty retirement annuity. As we point out
 
 infra,
 
 the Court of Claims also had power to award fees under the EAJA. When the Federal Courts Improvement Act of 1982 (Pub.L. No. 97-164, 96 Stat. 25) became effective on October 1, 1982, it designated the new Claims Court to be the forum for the resolution of a class of cases then pending in the Court of Claims. Section 403(d) of the Improvement Act provides that “[a]ny matter pending before a commissioner of the United States Court of Claims on the effective date of this Act . ..
 
 shall be determined
 
 by the United States Claims Court” (emphasis added). Unlike § 403(a) of the Act,
 
 see infra
 
 note 5, § 403(d) is not merely a transfer provision requiring an independent basis for jurisdiction.
 
 Cf. Aleut Tribe, supra,
 
 702 F.2d at 1018. The plain language of § 403(d)
 
 requires
 
 the Claims Court to
 
 determine,
 
 or issue final decisions, on matters such as the present fee application that were pending in the Court of Claims on September 30, 1982. The legislative history noted simply that § 403 “provides for the orderly disposition of cases pending on the effective date of the bill.” S.Rep. No. 275, 97th Cong., 2d Sess. 32 (1981), U.S.Code Cong. & Admin. News 1982, pp. 11, 42. Nothing in the Improvement Act or in its legislative history suggests that appellant would be divested of the opportunity to pursue an award of fees and costs because of the transfer provisions contained in the Act. On the contrary, Congress intended, at least with respect to matters pending undecided before the Court of Claims on September 30, 1982, to transfer such matters to the Claims Court — which then would have all the authority the predecessor court had to issue final decisions.
 

 There is no doubt that both the Court of Claims and this court could and can award fees under the EAJA. For the Court of Claims, see 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981);
 
 id.
 
 § 1920 (1976 & Supp. V 1981);
 
 id.
 
 § 451 (1976 & Supp. V 1981). On several occasions, that court considered the merits of EAJA awards.
 
 Estate of Berg v. United States,
 
 687 F.2d 377, 383 (Ct.Cl. 1982);
 
 Papson v. United States,
 
 No. 602-SOT, slip op. at 2-3 (Ct.Cl. June 18, 1982) (order). This court is likewise indisputably empowered by statute to award fees under the EAJA and costs (see 28 U.S.C. §§ 451, 1920, 2412(a), (d) (1976 & Supp. V 1981)) and it has reviewed the merits of EAJA awards assessed against the United States by the Claims Court in other transition cases similar to this dispute.
 
 See Kay Manufacturing, supra,
 
 699 F.2d at 1377;
 
 Gava v. United States,
 
 699 F.2d 1367, 1368 (Fed. Cir.1983). We hold, therefore, that both the Claims Court and this court possess jurisdiction to determine whether an EAJA award
 
 *1575
 
 is proper in fee applications transferred from the Court of Claims to the Claims Court by § 403(d) of the Improvement Act, and decided by the Claims Court on or after October 1, 1982.
 

 Aleut Tribe, supra,
 
 is not to the contrary. Appellant in that case attempted to pursue an interlocutory appeal from the Claims Court to this court, though it failed to comply with any of the necessary prerequisites
 
 [4]
 
 to establish our jurisdiction over such an appeal. Instead, the Tribe contended that § 403(a) of the Improvement Act
 
 [5]
 
 provided us with a new basis of jurisdiction to review interlocutory orders of the Claims Court. We rejected this interpretation of § 403(a) because Congress did not intend, in enacting that section, to confer a new right of interlocutory appeal upon appellants who neglect to seek proper certification.
 
 See supra
 
 note 5. Thus we held in
 
 Aleut Tribe
 
 that § 403(a) did not provide us with jurisdiction to hear the appeal.
 
 See Aleut Tribe, supra,
 
 702 F.2d at 1021.
 

 Here, in contrast, the Claims Court was required by the terms of § 403(d) to determine the merits of the fee application after the effective date of the Improvement Act. That court issued a final decision on the merits which is now properly appealable under the jurisdictional provisions of the Act.
 
 See
 
 § 127(a) of the Improvement Act (to be codified at 28 U.S.C. § 1295(a)(3). In short,
 
 Aleut Tribe
 
 does not preclude our jurisdiction over
 
 final
 
 decisions of the Claims Court, whether or not
 
 that
 
 court received the case for determination under § 403(d).
 
 Aleut
 
 merely denied
 
 interlocutory
 
 appellate review until the necessary prerequisites for that type of appeal are satisfied.
 
 See Aleut Tribe, supra,
 
 702 F.2d at 1019-21;
 
 see also supra
 
 note 5. In this case, appellant requests review of the Claims Court’s final decision on the fee application and our appellate jurisdiction is not in doubt.
 

 Ill
 

 We come to the question of whether the position of the United States in this dispute was substantially justified, as the trial court said. The United States bears the burden of proving substantial justification.
 
 See Knights of the Ku Klux Klan v. East Baton Rouge,
 
 679 F.2d 64, 68 (5th Cir.1982);
 
 Photo Data, Inc. v. Sawyer,
 
 533 F.Supp. 348, 351 (D.D.C.1982); H.R.Rep. No. 96-1418, 96th Cong., 2d Sess. 10-11,
 
 reprinted in
 
 1980 U.S.Code Cong. & Ad. News 4953, 4984, 4989. This court will not re-examine the government’s position in the administrative proceedings concerning appellant’s annuity; rather, we look to the government’s stance in the suit in the Court of Claims.
 
 Broad Avenue Laundry and Tailoring v. United States,
 
 693 F.2d 1387, 1390-91 (Fed.Cir.1982);
 
 see Gava v. United States,
 
 699 F.2d 1367, 1370 (Fed.Cir.1983);
 
 Alspach v. District Director,
 
 527 F.Supp. 225, 228-29 (D.Md.1981).
 

 The test for determining whether the government’s position was substantially justified is one of reasonableness. If the
 
 *1576
 
 government can demonstrate a reasonable basis for litigating the dispute — both in law and in fact — no EAJA award can be made.
 
 Goldhaber v. Foley,
 
 698 F.2d 193, 196 (3d Cir.1983);
 
 Broad Avenue, supra,
 
 693 F.2d at 1391;
 
 East Baton Rouge, supra,
 
 679 F.2d at 68; H.R.Rep. No. 96-1418,
 
 supra,
 
 at 10, 1980 U.S.Code Cong. & Ad.News at 4989. Moreover, because the EAJA’s primary purpose is to eliminate legal expense as a barrier to challenges of unreasonable governmental action, it is proper for us to assess attorney’s fees and costs against the government for a separate phase or portion of the litigation in which its position lacks substantial justification — even though the government may have adopted wholly reasonable positions in other facets of the case.
 
 See Goldhaber, supra,
 
 698 F.2d at 196-97; cf.
 
 Electronic Modules Corp. v. United States,
 
 702 F.2d 218, 219-20 (Fed.Cir.1983).
 

 In the light of these guidelines, we think that the trial judge erred in denying counsel fees to appellant for the liability phase of this litigation. In
 
 Ellis I, supra,
 
 the Court of Claims repeatedly characterized appellee’s denial of hazardous duty annuity benefits to appellant as “arbitrary and capricious.” 610 F.2d at 764, 765. The uncontested evidence presented to the court in
 
 Ellis I
 
 detailed appellant’s performance of perilous firefighting tasks upon literally hundreds of occasions:
 

 Ellis fought more than 500 working fires during his time at Great Lakes, more than anyone else. He was the only firefighter required to live on base so that he could attend all fires and he suffered numerous fire-related injuries. For example, he suffered back injuries that necessitated a 90-day leave of absence and ultimately helped lead to his decision to retire. He broke his arm at one fire, his ankle at another. One back injury eventually required surgery. These are not the kinds of injuries suffered by one who is a (sic) primarily a supervisor — they are injuries resulting from the kinds of risks taken by firefighters.
 

 Ellis I, supra,
 
 610 F.2d at 764 (footnote omitted). Though the administrative record was not so explicit in showing Ellis’ actual firefighting activities, a very substantial case on that point was made before the Civil Service Commission.
 

 Despite this overwhelming factual record depicting the frequency of Ellis’ firefighting activities, the government attempted to avoid liability in
 
 Ellis I
 
 by continuing to argue that the regulatory definition of “firefighter”
 
 [6]
 
 excluded appellant solely because his position description emphasized his supervisory duties. The Court of Claims roundly rejected this interpretation of the regulation as legally incompatible with the statute, and a “mockery of Congressional intent.”
 
 Id.
 
 at 765.
 

 
 *1577
 
 Given this analysis of the government’s position in the liability phase of the litigation, we cannot say that the government’s case had a reasonable basis in law and fact with respect to liability. Appellee has not shown why it was reasonable to continue to contest liability in the Court of Claims when confronted with both an administrative record and uncontroverted factual affidavits in court depicting the nature and extent of appellant’s actual firefighting functions. Appellee could have elected to concede the liability issue, but instead persevered in a fruitless effort to divest appellant of his entitlement to a hazardous duty annuity. This is precisely the type of unreasonable governmental action which the EAJA is designed to prevent. Private parties with limited resources, such as appellant, would be deterred from challenging such litigation conduct without the incentive of an award of fees under the EAJA in appropriate cases.
 
 See Goldhaber, supra,
 
 698 F.2d at 195; H.R.Rep. No. 96-1418,
 
 supra,
 
 at 9, 1980 U.S.Code Cong. & Ad. News at 4988. The mere fact that the Civil Service Commission originally denied appellant his annuity does not transform the government’s court stance into one of substantial justification.
 
 Broad Avenue, supra,
 
 693 F.2d at 1392;
 
 Gava, supra,
 
 699 F.2d at 1370. Appellant is entitled to attorney’s fees and costs for that portion of the litigation which established his entitlement to the hazardous duty annuity.
 

 Ellis’ request for fees and costs for the damages phase of this litigation,
 
 see Ellis II, supra,
 
 657 F.2d at 1180, stands on a different footing. During that portion of the proceedings the government contended, successfully at first, that Ellis should be treated as a constructive reemployed annuitant (on his return to the Navy in April 1976) for the purposes of calculating damages; on that theory, the trial judge said that appellant’s annuity payments during his period of reemployment at Great Lakes should be deducted from the total award of damages.
 
 See Ellis II, supra,
 
 657 F.2d at 1180. The Court of Claims rejected this recommendation and awarded appellant a full annuity from the date of his initial retirement.
 
 Id.
 
 at 1182;
 
 cf. Riggs v. Office of Personnel Management,
 
 709 F.2d 1486, 1488-1489 (Fed.Cir.1983). But the important point is that the Court of Claims did not consider the government’s (and the trial judge’s) position (on damages) to be indefensible. Indeed, the court noted “that a facially respectable argument ... [could] be made” for treating appellant as a constructive reemployed annuitant,
 
 Ellis II, supra,
 
 657 F.2d at 1180, and proceeded to decide the issue as a novel one of statutory construction. We must therefore agree with the trial court’s conclusion that the government’s position on damages was reasonable.
 
 See Ellis v. United States,
 
 1 Cl.Ct. 6, 11, 550 F.Supp. 674, 679-80 (1982).
 

 IV
 

 To summarize, we affirm the trial judge’s decision insofar as it denies Ellis attorney’s fees and costs for the damages phase of this action.
 
 See Ellis v. United States,
 
 1 Cl.Ct. 6, 10-11, 550 F.Supp. 674, 679-80 (1982). We reverse the trial judge’s determination that Ellis was not entitled to attorney’s fees and costs in contesting his eligibility for the hazardous duty retirement annuity.
 
 See id.
 
 at 8-10, 550 F.Supp. at 677-79. The case is remanded to the Claims Court for calculation of the precise amounts of attorney’s fees and costs which appellant is due.
 

 Affirmed in part, reversed in part, and remanded.
 

 [1]
 

 . 5 U.S.C. § 8336(c)(1) (Supp. V 1981) provides that:
 

 An employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer or firefighter ... is entitled to an annuity.
 

 [2]
 

 . Appellant retired from his government position for the second time in August 1980.
 

 [3]
 

 . At least one Claims Court case suggests that the Claims Court is fully empowered to award attorney’s fees and costs under the EAJA.
 
 See Bailey v. United States,
 
 1 Cl.Ct. 69, 73-74 (1983). Because of our disposition of the jurisdictional issue here,
 
 infra,
 
 we need not consider the validity of that decision with respect to matters begun on or after October 1, 1982.
 

 [4]
 

 . Appellant did not request certification of the interlocutory appeal in accordance with Fed.R. Civ.P. 54(b) or § 125(b) of the Improvement Act (to be codified at 28 U.S.C. § 1292(d)(2)):
 

 When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.
 

 [5]
 

 . Section 403(a) of the Improvement Act provides that:
 

 “[a]ny case pending before the Court of Claims on the effective date of this Act in which a report on the merits has been filed by a commissioner, or in which there is pending a request for review, and upon which the court has not acted, shall be transferred to the United States Court of Appeals for the Federal Circuit.”
 

 [6]
 

 . 5 C.F.R. § 831.904 (1978) provides:
 

 Firefighter.
 

 (a) “Firefighter” includes an employee whose primary duties, as set forth in the official position description, require the performance of work directly connected with the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment.
 

 (b) “Firefighter” also includes an employee who is transferred to a position the primary duties of which are not the control and extin-guishment of fires or the maintenance and use of firefighting apparatus and equipment, or from such a position to another such position, if—
 

 (1) Service in the position transferred to follows service in a firefighter position without—
 

 (i) A break in service of more than three days; or
 

 (ii) Intervening employment that was not as a firefighter;
 

 (2) The duties of the position transferred to are in the firefighting line of work in an organization with firefighting responsibilities; and
 

 (3) The position transferred to is—
 

 (i) Supervisory-one which requires a duty of supervising subordinate employees who are directly engaged in firefighting and/or in the maintenance and use of firefighting apparatus and equipment; or
 

 (ii) Administrative-one which includes an executive or managerial position and may include a clerical, technical, semi-professional, or professional position of a type also found in organizations with no firefighting responsibilities:
 
 Provided,
 
 That experience as a firefighter is a basic qualification for the administrative qualification for the administrative position.