**Fred V. CHERRY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 73–77.

United States Claims Court.

Dec. 9, 1983.

Kaletah N. Carroll, Fairfax, Va., for plaintiff.

Frances L. Nunn, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

### I.

In earlier proceedings in this case the Court of Claims held that plaintiff was entitled to recover damages for the Government's mismanagement of his military pay account, which had been entrusted to the Air Force under the Missing Persons Act, 37 U.S.C. §§ 551–558 (1976), while he was being held prisoner in North Vietnam. *Cherry v. United States*, 225 Ct.Cl. 312, 640 F.2d 1184 (1980). In accordance with the trial court's determination as to damages, as modified on appeal, *Cherry v. United States*, 697 F.2d 1043 (Fed.Cir.1983), the parties ultimately agreed that plaintiff was entitled to recover $41,994.69. A judgment in this amount was entered in plaintiff's favor on May 13, 1983.

As the prevailing party in the prior rounds of this litigation, plaintiff now brings before the court a timely application for the allowance of attorney's fees and expenses in the amount of $45,055.98 pursuant to the provisions of the Equal Access to Justice Act ("the Act"), 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981). The Government opposes the requested relief.[1]

---

1. Among the grounds of opposition argued by the Government is the contention that the

Examination of plaintiff's demand in light of the facts and controlling case law requires rejection of his application.

## II.

### A. *Attorney's Fees and Expenses*

Under the Act, *supra*, a "prevailing party other than the United States" shall be awarded:

> [F]ees and other expenses * * * incurred by that party in any civil action * * * brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. [28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981).]

An award of "fees and other expenses" may include "reasonable attorney fees" and "reasonable expenses of expert witnesses". 28 U.S.C. § 2412(d)(2)(A) (Supp. V 1981).

■■■ In the application of the foregoing statutory language, ruling case law has established, among others, the following criteria for determining whether "the position of the United States was substantially justified". First, "the position of the United States" for which the court must find substantial justification is the "government's litigating position before the court, not * * * the government's administrative action that prompted the suit." *Gava v. United States,* 699 F.2d 1367, 1371 (Fed.Cir.1983); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390 (Fed.Cir.1982). Second, in testing whether substantial justification exists, the standard is "essentially one of reasonableness" evaluated in light of "all the pertinent facts of the case." *Broad Avenue Laundry and Tailoring,* 693 F.2d at 1391. Consequently, whether or not the United States prevailed in the suit is not in itself determinative of whether the Government's position was substantially justified. *Id.* at 1391–92. Third, the justification for the Government's legal posture is to be measured "against the law as it existed when the government was litigating the case, not against new law enunciated * * * as a result of the appeal." *Kay Manufacturing Co. v. United States,* 699 F.2d 1376, 1379 (Fed.Cir.1983). Fourth, and finally, the ultimate burden of persuasion as to justification rests upon the Government itself, and not upon the prevailing party. *Ellis v. United States,* 711 F.2d 1571, 1575 (Fed.Cir.1983). Application of these guidelines requires a decision in the Government's favor.

We start with the fact that the litigation did not involve routine matters of military pay administration. To the contrary, the case was one of first impression, involving several difficult issues including a threshold question respecting the court's jurisdiction to hear the case, that is, its power to act in the matter. On that issue, the court was divided with one of the judges holding to the view that plaintiff's claim sounded in tort and was therefore beyond the court's subject matter jurisdiction. Moreover, even for the majority of the deciding panel, the jurisdictional basis proved difficult to define: a first published decision (reported at 219 Ct.Cl. 270, 594 F.2d 795 (1979)) was withdrawn when the Government moved

---

Claims Court is not a "court of the United States" within the meaning of the relevant statute and is, therefore, without authority to grant any of the relief here sought. The court rejects this argument. Speaking to this same issue, an earlier Claims Court decision noted that "Section 2412 makes no mention whatever of a 'court of the United States'; neither the terms of section 2412(a) emphasized by defendant, nor those of section 2412(d)(1)(A), are so phrased. Both provisions allude to '*any court having jurisdiction*' of *any* civil action brought by or against the United States". *Bailey v. United States,* 1 Cl.Ct. 69, 72, *vacated in part on other grounds and remanded,* 721 F.2d 357 (Fed.Cir. 1983) (emphasis original).

From this starting point, the Claims Court decision in *Bailey* then went on to develop cogent and convincing reasons for concluding that the court had authority, consistent with the language of the Act and its legislative history, to award attorney's fees and expenses, in any proper case within its jurisdiction. The arguments which the Government raises here do not come to grips with the analysis in *Bailey;* hence, we pass over them without further comment. So far as this court is concerned, *Bailey's* "jurisdictional" analysis is correct.

for relief from the judgment citing, in its favor, a then-recent decision of the Supreme Court rejecting the trusteeship theory on which the initial decision in *Cherry* had relied.[2]

■ Considering these differences in view, it seems obvious that plaintiff's right to proceed in this court was far from certain. Accordingly, for the Government to have challenged that right can hardly be regarded as the advocacy of an unreasonable or irresponsible legal position. Cogent arguments offered in connection with a matter of first impression define a position of the United States that is "substantially justified". *Change-All Souls Housing Corp. v. United States,* 1 Cl.Ct. 302, 304 (1982) (Willi, Sr. J.).

As to the other branch of the case—the determination of quantum—here too the Government's position cannot be faulted. The principal sticking point in this phase of the controversy was whether the whole of plaintiff's pay was subject to allotment by the Air Force (as the Government contended it was) or only those components constituting so-called base pay. Both at the trial level and on appeal, the Government's position was upheld.

The significance of the point now is that, except for the parties' disagreement on this issue (and, of course, the dollar differences that disagreement signified) the Government was otherwise willing to conclude the case by settlement. Indeed, it is a fact that the judgment amount awarded plaintiff on May 13, 1983 fell substantially short of the settlement figure which the Government had offered upon the close of trial more than three years earlier.

■ Though the tragedy that gave rise to this lawsuit may have made its defense an unpopular one for the Government to pursue, it is nevertheless true that, so far as the legally significant aspects of the matter are concerned, the Government urged a position in this court that was legally sound and factually sensitive. In short, its position here was "substantially justified". The request for attorney's fees and expenses, including those of the expert witness, must therefore be denied.

### B. Costs

In addition to his request for fees and expenses, plaintiff has also included in his application a request for the taxing of court costs, *i.e.*, expenditures for filing fees, marshalls' fees, copying costs and printing costs. The relevant statute, 28 U.S.C. § 2412(a) (Supp. V 1981), does not condition a prevailing party's recovery of these costs upon a special showing of entitlement. *Engels v. United States,* 2 Cl.Ct. 166, 167 (1983) (Kozinski, C.J.). Rather, their allowance here is a matter of the court's discretion, the only limitation being that "costs against the United States shall be imposed only to the extent permitted by law." RUSCC 54(d). For the most part, the costs which plaintiff seeks satisfy this requirement, that is, they are costs of the sort enumerated in Section 1920 of Title 28.

Nevertheless, the government opposes their allowance on the ground of mootness.

---

2. The Court of Claims, in its initial decision on liability, held that the Missing Persons Act, 37 U.S.C. §§ 551–558 (1976), placed a fiduciary obligation upon the Government to administer plaintiff's military pay account as his trustee. *Cherry v. United States,* 219 Ct.Cl. 270, 276–77, 594 F.2d 795, 799–800 (1979). Under this analysis the Government's arbitrary and capricious failure to safeguard plaintiff's interest represented a breach of that duty, which the court held was actionable under the Tucker Act. In support of its reasoning, the court cited its decision in *Mitchell v. United States,* 219 Ct.Cl. 95, 591 F.2d 1300 (1979).

In *Mitchell,* the court had recognized the right of Indian allottees to seek damages for the Government's breach of a fiduciary duty to properly manage their lands—a duty the court thought imposed by virtue of the Government's trustee status under the General Allotment Act, 25 U.S.C. §§ 331–358 (1976). The *Mitchell* holding was subsequently reversed by the Supreme Court. *United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The Court's reasoning appeared equally inhospitable to the *Cherry* analysis. Accordingly, upon the Government's motion for relief from the judgment, the *Cherry* decision was withdrawn and a new decision, but one once again favorable to plaintiff, was then issued. That second decision on liability appears at 225 Ct.Cl. 312, 640 F.2d 1184 (1980).

The Government points out that plaintiff submitted a request for costs to the United States Court of Appeals for the Federal Circuit. That request, which was limited to printing expenses associated with plaintiff's appeal, was rejected by the Clerk. The letter of rejection explained that that court was denying requests for costs in cases which, like plaintiff's, involved appeals "originally filed in the U.S. Court of Claims where there was no provision for costs to be recovered either by local rule or under FRAP 39." Plaintiff did not pursue this rejection; hence it is argued now that the question has been resolved against him.

This court does not accept this position. To be sure, plaintiff may not revive here a claim for those costs which had been denied him at the appellate level. Indeed, it would appear that plaintiff recognizes this fact. However, aside from being a bar to those particular costs, we can see no reason why this prior denial should be extended to also embrace costs associated with the trial aspects of the case.

To be sure, uniformity in the application of the law is always a desirable, if not essential, goal and that, in itself, would ordinarily be sufficient to persuade this court to deny costs here. But, in this connection, note must be taken of the fact that in another "transition" case, which, like plaintiff's, was commenced in and substantially resolved by the former United States Court of Claims, the appellate court did allow costs when that issue came before it on appeal from the Claims Court. *Ellis v.*

*United States,* 711 F.2d 1571, 1577 (Fed.Cir. 1983). Also, in the recent decision in *Bailey v. United States,* 721 F.2d 357 (Fed.Cir. 1983), the appellate court let stand that part of the Claims Court decision allowing costs pursuant to 28 U.S.C. § 2412(a) (Supp. V 1981). Given these expressions of approval, we do not see an allowance of costs in this case as being contrary to controlling decisional law. Accordingly, the costs requested, amounting to $588.40, are to be allowed.

In addition, it appears that some portion of the expenditures which plaintiff has included under the heading of attorney's expenses may qualify as taxable costs under 28 U.S.C. § 1920(4) (1976), *i.e.,* "[f]ees for exemplification and copies of papers necessarily obtained for use in the case". Since the court is without any means of rationally deciding how much, if any, of such expenses might qualify, it will be necessary for plaintiff's attorney to resubmit a bill of costs providing this information.

## CONCLUSION

The application for attorney's fees is denied. The Clerk is directed to tax costs in accordance with this opinion.