LeRoy H. **ELLIS**

v.

The **UNITED STATES.**

No. 261–78.

United States Court of Claims.

Dec. 12, 1979.

Paul F. Stack, Chicago, Ill., attorney of record, for plaintiff. Robert A. Filpi and Stack & Filpi, Chicago, Ill., of counsel.

R. W. Koskinen, Washington, D. C., with whom was Acting Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Earl Allen Sanders, of counsel.

Before DAVIS, KUNZIG and BENNETT, Judges.

*On Cross Motions for Summary Judgment*

KUNZIG, Judge:

This case, before the court on the parties' cross motions for summary judgment, arises from one LeRoy Ellis' efforts to retire from Federal service under 5 U.S.C. § 8336(c)[1] which establishes special annuity rights for retired Federal firefighters. The issue is whether plaintiff (Ellis) is a "firefighter" for purposes of the statute. The Government contends that plaintiff's supervisory duties exclude him from the statute's coverage. Because we think Ellis is a firefighter within the intended scope of the statute, we hold for plaintiff.

LeRoy Ellis was the civilian fire chief at the Great Lakes Naval Training Center in Great Lakes, Illinois. He worked for the Navy at Great Lakes since 1953, starting there at the age of 37 after a career which included several positions relating to firefighting and fire prevention and a period of active duty in the Navy during World War II.

On August 4, 1975, plaintiff applied to the Civil Service Commission's Bureau of Retirement, Insurance and Occupational Health (BRIOH) for retirement under the provisions of 5 U.S.C. § 8336(c), a section of the Civil Service Retirement law, 5 U.S.C. § 8331 *et seq.*, which permits retirement of certain law enforcement and firefighter personnel upon attaining age 50 and completing at least 20 years of such service.

On October 23, 1975, the Navy approved plaintiff's application and he officially retired on October 25, 1975. At the time, plaintiff was 59 years old and had worked at the Great Lakes Fire Department for 22 years. After his retirement, plaintiff was employed full-time in Alaska for Arctic Constructors, Inc., working on the Alaskan pipeline project. His position as assistant superintendent for logistics, at a salary of $1,485 per week, made use of his background in security while requiring no physical exertion.

However, on March 17, 1976, the Civil Service Commission determined that plaintiff was *not* eligible to retire from the Great Lakes Fire Department under the special annuity provisions for firefighters. He then went back to his old job at Great Lakes.

After his return, plaintiff suffered a broken foot while at a fire. The Commanding Officer of the Naval Administrative Command subsequently appointed Ellis security officer, naming a younger man as fire chief. Ellis was made the immediate supervisor of the new fire chief.

After appeals to the Civil Service Commission Appeals Review Board and to the Commission itself, plaintiff timely filed this suit.

At the outset, and in the hope of putting this "so-called" jurisdictional issue finally to rest, we comment briefly on the Government's attempt to question our right to hear this case. Essentially, the Government argues that since plaintiff was properly denied his retirement annuity because he did not come within the terms of the statute involved, he has no claim for money presently due, a prerequisite to a suit before this court. The next step in the argument is that since there is no claim for money presently due, there is no jurisdiction.

Several times in the past we have heard this attempt to put the cart before the horse, and we have rejected it on every occasion. This kind of circular argument assumes the impropriety of Ellis' attempted retirement to reach the conclusion that there is no claim for money presently due

---

1. 5 U.S.C. § 8336(c) (1976) states, in pertinent part:

"An employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer or firefighter . . . is entitled to an annuity."

from the Government. The reasoning conveniently assumes the answer. Whether Ellis was entitled to retire as a firefighter, however, is the crux of the whole case, because if Ellis was indeed improperly denied his annuity, then he does have a claim for money presently due.[2]

Of course, when met with this answer, the Government performs a slight sidestep and counters that we cannot make a determination on the propriety of Ellis' retirement because to do so requires a declaratory judgment, which under *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), we have no power to issue.

 But we *do* have such authority to issue a declaratory judgment where "it is tied and subordinate to a monetary award," *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). When dealing with money claims arising under 28 U.S.C. § 1491, as does the instant case, this court, in order "[T]o provide an entire remedy and to complete the relief afforded by the (money) judgment, . . . may . . . issue orders directing . . . placement in appropriate duty or *retirement* status . . . ." (emphasis added). 28 U.S.C. § 1491 (1976) (as amended in 1972). *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

 Thus, we have full jurisdiction under the recent statutory amendment to decide if plaintiff is a firefighter within the definition outlined in the law. We have full jurisdiction to declare him such and award him the annuity he seeks.

Having discussed the jurisdiction question, we turn to the basic problem in this case—whether Ellis is a "firefighter" for purposes of the statute involved. The court is guided in this determination by the statutory definition found in 5 U.S.C. § 8331(21), which states:

"Firefighter" means an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

In another section of the Civil Service Retirement law, Congress gave the Civil Service Commission authority to "prescribe such regulations as are necessary and proper . . . ." 5 U.S.C. § 8347(a) (1976). The Commission then promulgated the following regulation interpreting and amplifying the definition of "firefighter" as follows:

(a) "Firefighter" includes an employee whose primary duties, as set forth in the official position description, require the performance of work directly connected with the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment. (b) "Firefighter" also includes an employee who is transferred to a position the primary duties of which are not the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment, or from such a position to another such position, if—

\* \* \* \* \* \*

(3) The position transferred to is—
 (i) Supervisory—one which requires a duty of supervising subordinate em-

---

**2.** The Government makes another ill-conceived jurisdictional argument that plaintiff's claim arises under the Back Pay Act. 5 U.S.C. § 5596(1976). Under the Back Pay Act, the Government argues, plaintiff has no claim for money due because his salary at the Alaskan pipeline company was more than any salary he would have received at his old job, and such salary must be offset against any back pay he would now receive. The answer to this is obvious—plaintiff is suing for retirement annuity under § 8336 not under the Back Pay Act, and there is no similar offset of salary against retirement pay under the annuity laws (provided the annuitant's salary is from work in the private sector). If plaintiff is qualified to receive the annuity, it matters not how much money he made in another job—his entitlement to retirement annuity survives. Under defendant's argument, the jurisdiction of this court would depend on how much *outside pay* an annuitant earned. The absurdity of such a proposition is self-evident.

ployees who are directly engaged in firefighting and/or in the maintenance and use of firefighting apparatus and equipment . . . . 5 C.F.R. § 831.-904 (1978).

The eligibility of firefighters to retire under the "50–20" provisions of 5 U.S.C. § 8336(c) [set out at note 1 above] is the result of a relatively recent amendment to the Civil Service Retirement laws, enacted by Public Law No. 92–382, 86 Stat. 539 (August 14, 1972).[3] Prior to that time, retirement under that section was available solely to law enforcement officers. In enacting the amendment, Congress clearly intended to attract more candidates to the firefighting service and to reward those who so risk their lives. The House Post Office and Civil Service Committee report accompanying the legislation primarily stressed the hazardous nature of firefighting duties, finding such hazard to be at least equal to that faced by law enforcement officers. See, H.R.Rep. No. 92–840, 92nd Cong., 2nd Sess., reprinted in 1972 U.S.Code Cong. & Admin.News, pp. 2941, 2942–43.

When the law was passed granting to firemen the benefits of hazardous duty retirement provisions, the Navy began taking from plaintiff's pay an increased deduction to pay for the increased benefit. Then, when plaintiff applied for retirement, the Navy determined that he was entitled to retire under the special firefighter provisions and approved his retirement on October 23, 1975.

At this point in our examination of the case, perhaps a more in-depth analysis of the facts and the holdings of the various appeals boards is in order.

On December 10, 1975, BRIOH informed plaintiff that a tentative determination had been made that he was ineligible for retirement under the provisions of 5 U.S.C. § 8336(c), but that further examination would be made of his position descriptions, to be obtained from his agency, before a final determination was made. Plaintiff was informed that if the initial determination to deny his application was confirmed, restoration to his agency's employment rolls would be directed.

On March 17, 1976, BRIOH issued its final decision in plaintiff's case, holding that he was ineligible to retire under 5 U.S.C. § 8336(c). The decision letter stated that plaintiff's duties in his various positions had been primarily of a supervisory-administrative nature and not directly connected with firefighting. Subsequent to the BRIOH decision, plaintiff's retirement was cancelled as erroneous and he was restored to his former position by the Navy Department.

On July 26, 1977, the Civil Service Commission Appeals Review Board affirmed the denial of plaintiff's application for retirement. The Board held—

—that the primary duties of each of the various positions plaintiff held over the years were of a supervisory and administrative nature, and that the BRIOH was correct in so holding;[4]

—that plaintiff had not transferred into his supervisory positions directly from a "line" firefighting position;[5]

—that in the absence of such a direct transfer, Ellis could in no way be deemed to fit into the definition of "firefighter" in § 8331(21), and therefore he was not entitled to retire under the special provisions for firefighters.[6]

3. A newer version of this amendment was enacted by Public Law No. 93–350, 88 Stat. 355 (July 12, 1974). It was merely a reorganization of the statute and made no changes material to the issues at bar.

4. Therefore plaintiff is not eligible under the first half of the definition in § 8331(21).

·5. Therefore plaintiff is not eligible under the second half of the definition in § 8331(21).

6. Thus achieving the absurd and unjust result that a chief for 20 years, up from two years in the firefighting ranks plus 20 thereafter, even as a non-firefighting chief, gets a firefighter's annuity. A chief for 22 years, out fighting fires continuously for 22 years (more fires than anyone else), does not.

On March 1, 1978, the Civil Service Commission declined to reopen and reconsider plaintiff's appeal, affirming the Appeals Review Board decision both with regard to the proper interpretation of the language in 5 U.S.C. § 8331(21) and the factual determination that plaintiff's duties had always been primarily supervisory and administrative rather than directly connected with firefighting.

Defendant agrees with the Civil Service Commission and contends plaintiff was not a line firefighter as described in the first half of § 8331(21) (the definitional paragraph). By determining that Ellis was in a primarily supervisory position, the defendant then looks to the second half of the definitional paragraph to see whether Ellis transferred into his supervisory position *directly* from a line firefighter position. Finding no such direct transfer, defendant concludes that Ellis is ineligible for hazardous duty retirement.

Plaintiff argues that on the uncontested facts of this case he *was* a firefighter as described in the first half of the definitional paragraph and that Congress intended persons in his position to receive the benefits of the hazardous duty retirement law.

■ We hold that Ellis was clearly a firefighter whose duties were "primarily to perform work directly connected with the control and extinguishment of fires or the maintenance of firefighting apparatus and equipment." Defendant's decision to the contrary is arbitrary and capricious.

In support of this holding it is useful to remember the maxim that "a clear and unambiguous statute speaks for itself," *Selman v. United States*, 204 Ct.Cl. 675, 680, 498 F.2d 1354, 1356 (1974) and that the bare language of a statute is to be given its ordinary meaning "unless overcome by a persuasive showing from the purpose or history of the legislation." *Ocean Drilling & Exploration Co. v. United States*, 600 F.2d 1343, 1347, 220 Ct.Cl. —— (1979), citing *Aparacor, Inc. v. United States*, 215 Ct.Cl. 596, 600, 571 F.2d 552, 554 (1978). The ordinary meaning of the term "firefighter" as used in this statute is a person who combats fires, and the facts show Ellis did just that.

Indeed, according to his affidavit and the affidavits of others (which are not contested by the Government and which under cross-motions for summary judgment we accept as true), Ellis fought more than 500 working fires during his time at Great Lakes, more than anyone else. He was the only firefighter required to live on base so that he could attend all fires and he suffered numerous fire-related injuries.[7] For example, he suffered back injuries that necessitated a 90-day leave of absence and ultimately helped lead to his decision to retire. He broke his arm at one fire, his ankle at another. One back injury eventually required surgery. These are not the kinds of injuries suffered by one who is primarily a supervisor—they are injuries resulting from the kinds of risks taken by firefighters.

The statute granting firefighters liberalized retirement eligibility was obviously intended to give special benefits to those who in their careers continuously expose themselves to the immediate zone of danger involved in firefighting, and Ellis repeatedly was in such danger.[8]

■ Defendant contends that plaintiff's position descriptions support its determination that plaintiff's duties were primarily supervisory, and the regulation involved requires looking only to position de-

---

7. The record is replete with affidavits from co-workers attesting to Ellis' direct participation in firefighting, describing numerous occasions in which Ellis risked personal danger, i. e., entering smoke-filled houses, climbing ladders, entering over 300 burning buildings. The list goes on and on.

8. Even the Civil Service Commission's own Fire Protection and Prevention Position Classification Standards Manual, promulgated in 1971, states at page 3 that "[T]here is no such thing as a 'safe' fire." Living on base, Ellis attended fires on all shifts. His exposure to danger is self-evident.

scriptions.[9] We hold, however, that on the particular facts of this case, looking solely to plaintiff's position description brings about a result contradicting the intent of the statute. "[I]t is well established that a regulation which 'operates to create a rule out of harmony with the statute, is a mere nullity.'" *Lykes Bros. S.S. Co. v. United States*, 513 F.2d 1342, 1350, 206 Ct.Cl. 354, 369 (1975). It is equally true that an administrative decision out of step with the overall statute under which it is made must be set aside. *See generally, Poschl v. United States*, 206 Ct.Cl. 672 (1975); *Morelli v. United States*, 177 Ct.Cl. 848 (1966); Davis, Administrative Law § 30.05 (1972). *Cf. Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The arbitrary and capricious nature of defendant's interpretation of the law and application of the facts to the law in this case is evidenced by its argument throughout that the terms "firefighter" and "supervisor" are mutually exclusive; that any fire department employee with supervisory duties can not be covered by the hazardous duty annuity statute (unless, of course, he transferred into that supervisory position from a regular firefighting position). We do not agree. Ellis was not purely a supervisor as envisioned by the second half of the definitional paragraph. At the time Ellis sought retirement and through most of his career, he was primarily a firefighter who also had supervisory duties.

Clearly his employer assumed he was eligible for hazardous duty retirement. Otherwise, why take increased deductions from his pay to fund the hazardous duty benefit?

Were we to accept the Government's position that no supervisor can be a "firefighter" we would be endorsing the proposition that every time a fire truck roars down the street, carrying its typical crew of firemen, one of them (the top man in charge) would not be a fireman. Such a result is hardly what was envisioned by the framers of the statute. Such a result would make a mockery of Congressional intent.

In short, we hold that Ellis is a "firefighter" within the definition contained in the first half of 5 U.S.C. § 8331(21), given the facts of this case depicting extensive firefighting activity on his part. The Civil Service Commission's decision to the contrary was arbitrary, capricious and not in keeping with the plain intent of the statute involved.

Accordingly, after thorough consideration of the parties' submissions and after oral argument, plaintiff's motion for summary judgment on his claim for retirement annuity is granted. Defendant's motion for summary judgment on that issue is denied.[10] The case is remanded to the trial division for further appropriate action pursuant to Rule 131(c).

---

**9.** 5 C.F.R. § 831.904(a) (1978).

**10.** In his petition, plaintiff also sought judgment for wages he would have received from his job on the Alaskan pipeline had he not returned to his Navy employment after his abortive retirement. (Defendant did not "force" him to return; he did so only to keep accumulating retirement credit and protect what credit he had.) In effect, this is merely a claim for damages resulting from defendant's alleged tortious interference with plaintiff's employment contract for the Alaskan pipeline job. This court has no jurisdiction over cases sounding in tort. *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 192 Ct.Cl. 649 (1970); *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967); 28 U.S.C. § 1491. *See Williamson v. United States*, 166 Ct.Cl. 239 (1964). Moreover, plaintiff has cited no case, and we know of none, in which a plaintiff suing for back retirement pay could also recover consequential damages like those sought in the instant case. Therefore, the Government's motion for summary judgment as to this additional claim is granted. This second count of plaintiff's petition is dismissed.