EDWIN BOYLAN, JOHN E. BUTLER, DOMINIC G. FERLAUTO, THOMAS FITZPATRICK, JOHN W. GARDNER, EDWARD J. GRAY, WILLIAM P. HAYES, JOHN HUSSEY, JAMES N. KARAS, WILLIAM N. LUCK, THOMAS W. MARTIN, WILLIAM R. NIXON, AND ALBERT J. SHLEEH, PLAINTIFFS–RESPONDENTS, v. STATE OF NEW JERSEY, CITY OF JERSEY CITY, CITY OF IRVINGTON, TOWN OF MONTCLAIR, AND CITY OF NEWARK, DEFENDANTS–APPELLANTS.

WILLIAM J. COMER, FIRE CHIEF OF THE CITY OF PATERSON; KENNETH PETERSON, FIRE CHIEF OF THE CITY OF PASSAIC; GEORGE SBARRA, FIRE CHIEF OF THE TOWNSHIP OF BELLEVILLE; JAMES HOUN, FIRE CHIEF OF THE CITY OF HOBOKEN; EDWARD WOODS, FIRE CHIEF OF THE CITY OF MARGATE CITY; JOHN W. GARDNER, FIRE CHIEF OF THE TOWN OF MONTCLAIR; AND NEW JERSEY PAID FIRE CHIEFS' ASSOCIATION, PLAINTIFFS–RESPONDENTS, v. THE CITY OF PATERSON, THE CITY OF PASSAIC, THE TOWNSHIP OF BELLEVILLE, THE CITY OF HOBOKEN, THE CITY OF MARGATE CITY, THE TOWN OF MONTCLAIR, AND ALL MUNICIPALITIES OF THE STATE OF NEW JERSEY, DEFENDANTS–APPELLANTS.

ALEXANDER M. BEATTIE, JR., APPELLANT, v. CITY OF CLIFTON, N.J. (A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY); AND THE STATE OF NEW JERSEY, N.J. DIVISION OF PENSIONS, RESPONDENTS.

GIOACCHINO FIORENTINO, FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION—LOCAL 27; DAVID SLAUGHTER; AND CITY OF OCEAN CITY, RESPONDENTS, v. NEW JERSEY DEPARTMENT OF THE TREASURY—DIVISION OF PENSIONS; HON. DOUGLAS R. FORRESTER, DIRECTOR OF THE DIVISION OF PENSIONS; AND THE POLICE AND FIREMEN'S RETIREMENT SYSTEM OF NEW JERSEY, APPELLANTS.

Argued January 31, 1989—Decided August 2, 1989.

*Michael R. Clancy,* Deputy Attorney General, argued the cause for appellants State of New Jersey, et al. (*Donald R. Belsole,* Acting Attorney General of New Jersey, attorney, *Patrice M. Connell,* Deputy Attorney General, on the briefs).

*Ernest G. Ianetti* argued the cause for respondents Edwin Boylan, et al. (*Brown & Brown,* attorneys).

*James V. Segreto* argued the cause for respondents William J. Comer, et al. (*Segreto & Segreto,* attorneys).

*Mervyn R. Montgomery* argued the cause for respondents Alexander M. Beattie, et al.

*Bruce M. Gorman* submitted a letter in lieu of a brief on behalf of respondents Gioacchino Fiorentino, et al.

*Dennis J. Alessi* submitted a brief on behalf of *amicus curiae* New Jersey State Firemen's Mutual Benevolent Association (*Fox and Fox,* attorneys, *Dennis J. Alessi* and *David I. Fox,* of counsel).

*Thomas A. Gonzoph* submitted a brief on behalf of *amicus curiae* The Fire Fighters Association of New Jersey (*Schlesinger, Schlosser & Foy,* attorneys).

*Kenneth I. Nowak* submitted a brief on behalf of *amicus curiae* New Jersey State Police Benevolent Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys, *James R. Zazzali,* of counsel).

The opinion of the Court was delivered by

POLLOCK, J.

These appeals involve challenges to the enforcement of early mandatory retirement provisions for law-enforcement officers and firefighters who are enrolled in the Police and Firemen's Retirement System (P & FRS) or the Public Employees Retirement System (PERS). We hold that the 1986 amendments to the federal Age Discrimination in Employment Act (ADEA), 29 *U.S.C.* § 621 to 634, permit the early mandatory retirement of such officers and firefighters who serve primarily in an administrative or supervisory capacity.

The Appellate Division succinctly summarized the relevant facts:

The facts are not disputed in any of these appeals. All plaintiffs were advised by a February 19, 1987 directive issued by the Division of Pensions (Division) in the State Department of the Treasury, based on legal advice from the Attorney General, that they had to retire because they were over age 65. In the appeal brought by Edward Boylan and others, all of the plaintiffs serve as officers in various positions in police and fire departments. The plaintiffs include one police chief, four deputy chiefs, three police captains and one detective. They also include one fire chief, two battalion chiefs and two captains from fire departments. An additional plaintiff named in the complaint is one superintendent Nixon. Each plaintiff is between the age of 65 and 70 years and is a member of either the P & FRS or the PERS.

In the Comer appeal plaintiffs, paid fire chiefs in their respective municipalities, are between ages 65 and 70, and are members of the P & FRS. In the third appeal Beattie is a deputy fire chief who is 68 years of age. In the Fiorentino appeal the plaintiffs include a fire captain, the City of Ocean City, a collective bargaining representative and Firemen's Mutual Benevolent Association, Local 27.

The plaintiffs in each of these matters, with the exception of the Beattie appeal, instituted suit seeking injunctive relief against the enforcement of the mandatory retirement requirement. The matters were transferred to the Appellate Division in three of the appeals on orders entered by the trial court. Beattie took a direct appeal to this court from the mandatory retirement directive issued by the Division of Pensions and sought and obtained injunctive relief pending disposition of the appeal. [222 *N.J.Super.* 313, 317–18 (footnote omitted).]

As that summary indicates, plaintiffs held supervisory positions in county or municipal, police, and fire departments in New Jersey. Each is a member of either the P & FRS or PERS pension system and each is over sixty-five but under seventy. The statutory provisions of both systems generally require members who are law-enforcement officers and firefighters to retire at age sixty-five whether they serve in supervisory or front-line positions. *N.J.S.A.* 43:15A–99; *N.J.S.A.* 43:16A–5(1).

Plaintiffs, like many other people who reach retirement age, are reluctant to see their careers come to an end. That reluctance is reinforced in the present case by various changes in federal legislation over the last two decades. In these changes, Congress has sought to balance the competing interests of employees, young and old, and the public. Our task is not to strike a balance of our own, but to recognize the balance struck by Congress.

I

In 1983, the United States Supreme Court held that the tenth amendment to the United States Constitution, which reserves to the states the powers not delegated to the United States, did not bar the extension of the ADEA to the States. *EEOC v. Wyoming*, 460 *U.S.* 226, 103 *S.Ct.* 1054, 75 *L.Ed.*2d 18 (1983). The Court found the ADEA to be a valid exercise of federal authority under the Commerce Clause. *Id.* at 243, 103 *S.Ct.* at 1064, 75 *L.Ed.*2d at 33. Later that year, the Attorney General of New Jersey issued a formal opinion concluding that the pension provisions requiring mandatory retirement before age seventy for uniformed police officers and firefighters were

unenforceable under the ADEA, unless those provisions were a bona fide occupational qualification. 5 *Op.N.J.Att'y Gen.* (1983). The amendments to the ADEA that are the subject of this action took effect in 1986. Based on those amendments, the Attorney General issued a second formal opinion concluding that the 1986 amendments allowed the mandatory retirement provisions in the New Jersey pension plans. 12 *Op.N.J.Att'y Gen.* (1987).

Against that background, the Appellate Division held that the 1986 amendment allowed the mandatory retirement of only those plaintiffs involved in "active" law-enforcement or fire-fighting efforts. 222 *N.J.Super.* at 335–36. Interpreting the definitional sections of the 1986 amendments, the Appellate Division further held that the exception to the ADEA's general prohibition against age discrimination would not apply to supervisory firefighters not "directly" and "primarily" involved in firefighting or to supervisory law-enforcement officers not "directly" involved in law enforcement. *Id.* at 331. The court then remanded the case to the Division of Pensions for the determination whether the 1986 amendments applied to the individual plaintiffs. We granted the State's petition for certification, 111 *N.J.* 648 (1988), and now reverse.

## II

As the preceding statement of the factual and procedural history indicates, this case turns on the meaning of the 1986 amendments to the ADEA. When interpreting the 1986 amendments, our goal obviously is to discern the intent of Congress. *Philbrook v. Glodgett,* 421 *U.S.* 707, 713, 95 *S.Ct.* 1893, 1898, 44 *L.Ed.*2d 525, 533 (1975). We begin with the words of the statute.

Enacted in 1967, the ADEA bans discrimination in the hiring or discharge of employees on the basis of age. 29 *U.S.C.* § 623(a)(1). One of its main purposes is to prevent "the setting of arbitrary age limits regardless of the potential for job

performance." 29 *U.S.C.* § 621(a)(2). The ADEA, however, permits employers to make employment decisions on the basis of age when it is a "bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 *U.S.C.* § 623(f)(1). In addition, the ADEA states that it shall not be unlawful for an employer "to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan," providing such plan is "not a subterfuge to evade the purpose of this chapter." 29 *U.S.C.* § 623(f)(2). No such employment benefit plan, however,

> shall excuse the failure to hire any individual, and no such seniority plan or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual. [*Ibid.*]

As originally enacted, the ADEA protected only individuals between age forty and sixty-five and did not apply to public employees. 29 *U.S.C.* § 630(b)(2); § 631(a).

In 1974, Congress amended the ADEA by expanding its definition of "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency * * *." 29 *U.S.C.* § 630(b)(2); *Pub.L.* 93–259, § 28(a)(1), (2), April 8, 1974, 88 *Stat.* 74. Four years later Congress further amended the ADEA to include individuals who were "less than 70 years of age." 29 *U.S.C.* § 631(a); *Pub.L.* 95–256, § 3(a), April 6, 1978, 92 *Stat.* 189, 190. Then in 1986, Congress further amended the ADEA. *Pub.L.* 99–592, § 2(c)(1), Oct. 31, 1986, 100 *Stat.* 3342, 3344. One amendment removed the age "cap" of seventy, so that with few exceptions, the Act now protects all workers over forty. 29 *U.S.C.* § 631(a). Of even greater relevance to the present case, the 1986 amendments established for a period of seven years an exception to the prohibition against age discrimination against law-enforcement officers and firefighters. Before proceeding to the provisions of the 1986 amendments, we note that a bill has been introduced that would amend the ADEA to establish a permanent exception for state

and local firefighters and law-enforcement officers. *H.R.* 1200, 100th.

Turning to the words of the statute, 29 *U.S.C.* § 623(i) provides:

> It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State, * * * to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—
>
> > (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and
> >
> > (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

Congress defined law-enforcement officers and firefighters under the ADEA in subsections (j) and (k) of 29 *U.S.C.* § 630:

> (j) The term "firefighter" means an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, *including an employee engaged in this activity who is transfer-red to a supervisory or administrative position.*
>
> (k) The term "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of a State, *including an employee engaged in this activity who is transferred to a supervisory or administrative position.* For the purpose of this subsection, "detention" includes the duties of employees assigned to guard individuals incarcerated in any penal institution. [Emphasis added.]

A straightforward reading of these definitions indicates that Congress intended this exception to include not only rank-and-file officers presently performing "line" functions, but also officers who once performed those duties and have since been promoted to supervisory or administrative positions.

In defining "firefighter," 29 *U.S.C.* § 630(j) limits that term to employees whose duties "are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment * * *." The next subsection defines "law enforcement officer" and limits that term to employees who are "primarily" involved in the "investigation, apprehension, or detention * * *." 29 *U.S.C.* § 630(k). The sense of each

definition is to cover firefighters and law-enforcement officers who have "line" responsibilities. Each subsection, moreover, contains a phrase beginning with the participle "including." 29 *U.S.C.* § 630. When the participial phrases are read, as we believe they must be read, with reference to the basic definitions of "firefighter" and "law enforcement officer," it becomes clear that the purpose of the phrases is to include supervisors and administrators within the basic definitions. Consequently, we disagree with the Appellate Division, which concluded that such an interpretation would render the adverbs "primarily" and "directly" surplusage in the definition of "firefighter" and "law enforcement officer." 222 *N.J.Super.* at 329. The purpose of those adverbs is to exclude from the definition of covered employees those firefighters and law-enforcement officers who are not administrators or supervisors and who are not "primarily" and "directly" involved in "line" activities. We find nothing in the legislative history of the 1986 amendments, or in that of predecessor bills, to support the Appellate Division's conclusion that Congress intended the participial phrases to apply to officers who are promoted to supervisory positions as a pretext to avoid mandatory retirement. *See* 222 *N.J.Super.* at 330. To the contrary, the legislative history is consistent with a plain reading of the statute that leads to the conclusion that Congress intended the exception from the ADEA to apply to all law-enforcement officers and firefighters, whether or not they are "line" employees or supervisors.

Congress modelled the 1986 ADEA amendments on a section of the 1984 federal Civil Service statute allowing the federal government to retire mandatorily federal law-enforcement officers and firefighters. 5 *U.S.C.* § 8335(b). Consequently, the definition of "firefighter" and "law enforcement officer" in the 1986 amendments to the ADEA is virtually identical to the definition of those terms in the 1984 Civil Service statute. Under that statute, 5 *U.S.C.* § 8331(20), a "law enforcement officer" is defined as

an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity *who is transferred to a supervisory or administrative position.* [Emphasis added.]

Under 5 *U.S.C.* § 8331(21), a "firefighter" is defined as

an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, *including an employee engaged in this position who is transferred to a supervisory or administrative position.* [Emphasis added.]

Before the enactment of the ADEA, the Civil Service Commission adopted regulations interpreting the Civil Service statute. Those regulations make clear that the statute allows the mandatory retirement of federal law-enforcement officers and firefighters in supervisory positions. Thus, the regulations concerning the definition of "law enforcement officer," 5 *C.F.R.* § 831.903 (1983 reg.), accompanying the 1984 federal statute state in relevant part:

(c) "Law enforcement officer" also includes an employee who is transferred to a position the primary duties of which are *not* the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States, or from such a position to another position, if—

(1) Service in the position transferred to follows service in a law enforcement position without—

(i) a break in service of more than three days; or

(ii) intervening employment that was not as a law enforcement officer. [Emphasis added.]

Similarly, 5 *C.F.R.* § 831.904(b) (1983 reg.) states:

(b) Firefighter also includes an employee who is transferred to the position of a supervisor the primary duties of which are not to control an extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, or from such a position to another such position, if—

(1) Service in the position transferred to follows service in a firefighter position without—

(i) A break in service of more than three days; or

(ii) Intervening employment that was not as a firefighter * * *.

Following the unmistakable import of these regulations, courts have ruled that they apply to firefighters or law-enforcement officers who transfer to supervisory positions. *See Ellis v. United States,* 222 *Ct.Cl.* 65, 610 *F.*2d 760, 765 (1979); *Key v.*

*Office of Personnel Management,* 26 *M.S.P.R.* 64 (1985); *Nielsen v. Office of Personnel Management,* 24 *M.S.P.R.* 364 (1984).

When considering the 1986 amendments to the ADEA, Congress realized that courts had interpreted the Civil Service statute to allow the forced retirement of firefighters and law-enforcement officers from supervisory positions. In a report recommending the rejection of *H.R.* 5310, a predecessor of the bill that ultimately became the 1986 ADEA amendments, the chairman of the Select Committee on Aging in the House of Representatives wrote: "Many, if not most, of the law enforcement officers and firefighters mandatorily retired [under 5 *U.S.C.* § 8335(b)] *are retired from supervisory or administrative positions * * *." The Myths and Realities of Age Limits for Law Enforcement and Firefighting Personnel* (*Myths and Realities*), Report by the Chairman of the House Select Committee on Aging (Chairman Edward R. Roybal), 98th Cong., 2d sess. at 5 (1984) (emphasis added).

The legislative history of the 1986 amendments is replete with additional evidence that Congress intended to permit the mandatory retirement of state and local law-enforcement and firefighting officers who had been promoted to administrative and supervisory positions. The most persuasive evidence of that intent appears in a hearing conducted by the House of Representatives Subcommittee on Employment Opportunities with regard to *H.R.* 1435, the purpose of which was to exempt police and firefighters in states and localities from the coverage of the ADEA. That hearing was conducted on the same day as a hearing on *H.R.* 4154, which was ultimately adopted as the subject 1986 amendments to the ADEA. At the hearing on *H.R.* 1435, Representatives Matthew Rinaldo and William Hughes of New Jersey, sponsors of both *H.R.* 4154 and *H.R.* 1435, debated with Representative Martinez, chairman of the subcommittee. The following excerpt from the debate suffices for our purposes:

Mr. Martinez: We normally think of age-related ability in terms of jobs and activities associated with, let's say, the patrol officer or the firefighter who is actually on the ladder truck or actually involved in fighting the fire. *But there are certainly jobs that, regardless of what age one attains, can be done by people at an older age without the physical fitness requirement, for example, administrative jobs, both in the police department and fire department.*

In a bill that simply allows the States to set a retirement age somewhat based on physical ability, how do you deal with those people who could go on being productive to a city or a State or county based on their experience and knowledge?

\* \* \* \* \* \* \* \*

I guess what I am asking is have we thought about any way to allow for that exception? And I guess right now we haven't.

Mr. Rinaldo: Well, I will tell you, there is one way in rare circumstances. *I know in our State the head of the State police is over the mandatory retirement age and the State passed legislation allowing an exception.* So, I guess you could do that in individual States.

Mr. Martinez: \* \* \* I was looking for some mechanism that might be added that might take care of that exception.

But, of course, as Congressman Rinaldo points out, it might create more of a nightmare and more of a hassle and hazard than if we just left it to the discrepancy [sic] of the locals. [*Exemptions for Police and Firefighters under the Age Discrimination in Employment Act,* Hearing Before the House Subcommittee on Education and Labor, 99th Cong. 2d Sess. 6–9 (1986) (emphasis added).]

Further evidence that Congress intended to allow the states to retire supervisors is found in the 1984 Report by the Chairman of the House Select Committee on Aging, which states:

Ironically, this legislation would not only allow forced retirement at any age for the police officer in a patrol car *but also for the police chief who sits at a desk;* not only for the firefighter who enters burning buildings but for the dispatcher or desk clerk who never leaves his or her chair for hazardous duty. [*Myths and Realities, supra, iv* (emphasis added).]

The legislative history also contains repeated statements by congressmen and senators emphasizing that their goal was to provide states and localities with the same flexibility as that enjoyed by the federal government in compelling the mandatory retirement of law-enforcement and firefighting personnel. *See, e.g., H.R.* 4154, 99th Cong., 2d sess., 132 *Cong. Rec.* 5641 (1986) (Statement of Rep. Roukema); *Cong. Rec.* S. 16854 (daily ed. Oct. 16, 1986) (statement of bill sponsor, Sen. Bradley); *Retirement Policies for Public Safety Officers,* Hearing Before the

Subcommittee on Labor of the Senate Committee on Labor and Human Resources, 99th Cong., 1st Sess. 9, 30, 182 (March 18, 1986) (Statements of bill sponsors, Sen. Bradley & Sen. Ford; Joint Statement of bill sponsors, Rep. Hughes and Rep. Rinaldo). For example, Sen. Bradley of New Jersey, a sponsor of *H.R.* 4154, stated that the bill

allow[s] States and municipalities the flexibility to determine entry and retirement ages for their public safety officers and firefighters. * * * Since 1974, Federal firefighters and law enforcement officers, including members of the FBI, secret service, and Federal prisons, must retire at age 55. This amendment extends the exemption for the next 7 years to States and municipalities to allow them to determine retirement and entry ages for their own public safety officers and firefighters, just as Congress has done for similarly situated Federal employees. [Cong. Rec. S. 16854 (daily ed. Oct. 16, 1986).]

In addition, the legislative history shows that Congress was concerned with the vulnerability of states to lawsuits following the decision of the United States Supreme Court in *EEOC v. Wyoming, supra,* 460 *U.S.* 226, 103 *S.Ct.* 1054, 75 *L.Ed.*2d 18. *Cong. Rec.* S. 16853 (daily ed. Oct. 16, 1986) (statement of Sen. Ford); Hearing before the Senate Subcommittee on Labor and Human Resources, 99th Cong., 1st Sess., *supra,* at 178 (joint statement of Rep. Hughes and Rep. Rinaldo); Hearing on Age Discrimination in Employment Act Amendments before the House Committee in Education and Labor, 98th Cong., 2d Sess. 23 (1984) (statement of Rep. Rinaldo). Congress evidently feared that the *Wyoming* decision would spawn expensive litigation that would force every state to establish that its mandatory retirement provisions were bona fide occupational qualifications. For example, Representative Roukema expressed her hope that *H.R.* 4154 would limit such lawsuits against state and local governments because "[d]efending these suits placed enormous burdens on state and local governments in terms of time and money spent on litigation." 99th Cong., 2d Sess., 132 *Cong. Rec.* 5642 (1986); *see also* Hearing Before the Senate Subcommittee on Labor and Human Resources, 99th Cong., 1st Sess., *supra,* at 16 (statement of Sen. Ford). Congress also feared that these lawsuits would produce conflicting and contradictory results. Hearing on Age Discrimination in

Employment Act Amendments before the House Committee in Education and Labor, *supra*, at 22 (statement of Rep. Rinaldo). In light of these clear statements, we reject as inconsistent with the intent of Congress the Appellate Division's requirement that mandatory retirement be resolved on a case-by-case basis, depending on whether the employee is "primarily" involved in law-enforcement activities or "primarily" and "directly" involved in firefighting duties. 222 *N.J. Super.* at 331.

In sum, we find that the plain meaning of "firefighter" and "law enforcement officer" indicates that Congress intended to except states from the requirements of the ADEA concerning mandatory retirement of law-enforcement and firefighting officers who are transferred from line functions to administrative or supervisory positions. We reject the Appellate Division's conclusion that federal Civil Service laws "provide little guidance" for the asserted reason that they are "concerned primarily with eligibility for merit bonuses and obtaining credits under the federal retirement acts." 222 *N.J.Super.* at 330. The extensive legislative history suggests that Congress understood that law-enforcement officers and firefighters in supervisory positions could be forced to retire under the federal Civil Service law. That history also demonstrates that Congress intended to give states and localities flexibility to require the mandatory retirement of their employees. Consequently, we conclude that plaintiffs can be required to retire under the State P & FRS and PERS plans.

 In the course of its decision, the Appellate Division noted that its interpretation of the ADEA was "consonant" with the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42. The LAD states in relevant part that

> [i]t shall be an unlawful employment practice, or, as the case may be, unlawful discrimination:
>
> a. For an employer, because of the * * * age * * * of any individual * * * to refuse to hire or employ or to bar or to discharge from employment such individual * * *. [*N.J.S.A.* 10:5–12.]

In 1985, the LAD was amended to provide that nothing in the Act should be construed to interfere with any bona fide retirement, pension, employee benefit, or insurance plan or program "provided that the provisions of those plans or programs are not used to establish an age for mandatory retirement." *N.J.S. A.* 10:5–2.1. During the same year, however, another statute, the Employment in Public Service Law, was amended to provide, notwithstanding any provision of any other law, that certain public employees could be subject to mandatory retirement, including "a member of a police or fire department employed in the service of the State or of any county or municipality thereof." *N.J.S.A.* 10:3–1. Thus, we do not perceive LAD to require any different result from that intended by Congress in the ADEA.

Like the Appellate Division, 222 *N.J.Super.* at 331–33, we find no merit in the argument raised by plaintiffs Boylan and Comer that the ADEA results in a violation of their right to equal protection of the laws. Initially, we note that age is not a suspect or "quasi-suspect" classification. *Vance v. Bradley*, 440 *U.S.* 93, 99 *S.Ct.* 939, 59 *L.Ed.*2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia*, 427 *U.S.* 307, 313, 96 *S.Ct.* 2562, 2567, 49 *L.Ed.*2d 520, 524–25 (1976); *Taxpayers Ass'n of Weymouth Township v. Weymouth Township*, 80 *N.J.* 6, 38–42 (1976). Nor are we dealing with a fundamental right or interest, which is "expressly guaranteed or clearly implied by the federal constitution." *Levine v. Department of Insts. and Agencies*, 84 *N.J.* 234, 258 (1980) (citing *Taxpayers Ass'n of Weymouth Township, supra*, 80 *N.J.* at 38). Consequently, plaintiffs are remitted to establishing that the age classification lacks a rational relationship to a legitimate state interest. *Taxpayers Ass'n of Weymouth Township, supra*, 80 *N.J.* at 40. Although we are sensitive to plaintiffs' contention that mandatory retirement has a profound psychological and physiological effect on older employees, the Legislature could have reasonably concluded that law-enforcement officers and firefighters in supervisory positions should be subject to

mandatory retirement. *See* 222 *N.J.Super.* at 318–19. Without belaboring the point, the mandatory retirement of some employees opens opportunities for others. Hence, Congress could have sought not only to provide states and localities with the same flexibility as the federal government, *supra* at 247, but also to preserve the morale of younger law-enforcement officers and firefighters who aspire to administrative or supervisory positions. Although we in no way denigrate the benefit of the experience of senior employees or the effect on them of forced retirement, Congress could have concluded that the demands of firefighting and law enforcement are such that the public would be better served by permitting states and localities to require firefighters and law-enforcement officials to retire at age sixty-five.

The judgment of the Appellate Division is reversed.

*For affirmance*—none.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.